UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 04-CV-138-TCK-SAJ |
| KELLY DOWDY, Individually and as Parent and Next Friend of LAUREN DOWDY, a Minor,[1] | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Now before the Court is Plaintiff's Motion for Summary Judgment (Dkt. # 73). Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this case seeking a declaratory judgment as to insurance coverage. Defendants Kelly and Lauren Dowdy counterclaimed for breach of contract and bad faith. The Court has granted in part and denied in part State Farm's motion for summary judgment on the claim for declaratory judgment. Order, Dkt. # 17, filed August 31, 2005. The instant motion is directed primarily at the bad faith counterclaim, although State Farm also seeks summary judgment as to defendants' damage claim for lost wages and impaired earning capacity. Since State Farm does not seek summary judgment on defendants' breach of contract claim or their claim for other types of damages, the Court deems the motion a motion for *partial* summary judgment.

---

[1] Kelly Dowdy died during the course of this litigation. Upon application of the defendants, the Court substituted Denise McKinnon, the personal representative of Dowdy's estate, and Victor Haug, guardian ad litem of Lauren Dowdy, as party defendants. Order, Dkt. # 27.

### I. Background

On January 28, 2003, Kelly Dowdy and her minor daughter, Lauren Dowdy, were in a vehicle owned and driven by a third person, Michele Leaming, when a vehicle driven by an uninsured tortfeasor, Michael Williams, struck Leaming's vehicle in a parking lot. Both Kelly Dowdy and Lauren Dowdy claimed to be injured. Leaming also claimed to be injured and apparently filed a claim against State Farm that has been paid. At the time of the accident, Leaming's vehicle was insured under a State Farm policy issued in Oklahoma to Leaming, and defendants were insured under a policy issued in Minnesota to Kelly Dowdy. On February 23, 2004, before defendants had made a claim for a specific amount under either policy, State Farm filed this declaratory judgment action to obtain a judicial determination of the manner in which each policy potentially provided coverage to defendants.[2] Defendants argue that State Farm filed the action in an attempt to "short-circuit" the adjustment process and "cut off" future bad faith.

State Farm argues that a legitimate dispute existed not only as to applicability of the two policies at issue, but a legitimate dispute continues to exist as to the value of defendants' claims. Kelly Dowdy was involved in a prior motor vehicle accident on June 12, 1998, in which she claimed she suffered permanent injuries to parts of her body which she now claims were also injured in the 2003 accident. At the time of the 1998 accident, Kelly Dowdy was a State Farm employee occupying a State Farm vehicle. She remained an employee at State Farm as an underwriting

---

[2] The Court determined that Oklahoma policy is the primary coverage and must be exhausted before the excess coverage of the Minnesota policy could be tapped. It also determined that, under the terms of the policies, injuries paid under the medical coverage of the Oklahoma policy cannot also be recovered under the personal injury protection coverage of the Minnesota policy, and claims paid under the personal injury protection coverage of the Minnesota policy cannot also be recovered under the uninsured motorist coverage. See Order, Dkt. # 17, filed August 31, 2005, at 7.

2

assistant-clerical, until April 30, 2003, although medical reports indicate that she may not have actually worked at her job after September or October 2002.

State Farm claims that, prior to filing this action, it was unable to obtain sufficient information to determine whether the injuries allegedly suffered by Kelly Dowdy in the 2003 accident were caused by that accident, the 1998 accident, or some combination of the two. State Farm also claims that it was unable to obtain sufficient information to determine whether Lauren Dowdy suffered any injuries caused by the 2003 accident or whether the injuries that Lauren Dowdy claims she suffered in the 2003 accident were caused by that accident or other events, including, in particular, her cheerleading activities. State Farm specifically asserts that it attempted to obtain statements from the defendants as part of its evaluation of their claims, but defendants were not cooperative. State Farm made at least 20 requests for information from defendants before the declaratory judgment action was filed. State Farm alleges that defendants responded to some of those requests, but the responses were delayed or inadequate. Defendants assert that Kelly Dowdy provided a statement before the lawsuit; that State Farm did not request a statement from Lauren Dowdy before the lawsuit; that the purported "lack of cooperation" occurred when State Farm representatives attempted to obtain the statements outside of formal discovery processes after the litigation commenced; that Kelly Dowdy gave a statement after the litigation commenced; and that Lauren Dowdy testified at deposition.

The deposition testimony of three doctors indicates that the Kelly Dowdy's medical problems may have been attributable to the 1998 accident or other conditions unrelated to the 2003 accident. See Motion, Dkt. # 73, Exs. 14-16. A fourth doctor, Richard Hastings, D.O., evaluated Kelly Dowdy on June 11, 2003, for purposes of her obtaining disability benefits. Kelly Dowdy told

Dr. Hastings that she was in a motor vehicle accident on June 12, 1998. His report details the severity of her back injuries as a result, as well as accompanying pain and fibromyalgia syndrome. He also reported that she had anemia and lower extremity instability, among other medical problems. He noted that two other doctors had declared her to be totally disabled. No mention is made in Dr. Hastings' report of the 2003 accident. He opined that she was "100% permanently totally disabled and economically unemployable" Id., Ex. 1, at 10.

Defendants point out that a fifth doctor, Jeffrey Pardee, M.D., evaluated Kelly Dowdy prior to the 2003 accident. Pardee found evidence that Kelly Dowdy had preexisting medical conditions which were not caused by the 1998 accident, and that the cervical strain injury that was caused by the 1998 accident had healed to the extent that she was capable of returning to work full time. See Resp. Br., Dkt. # 84, Ex. 1. Defendants also point out that Social Security benefits were awarded to Kelly Dowdy and received after her death. The Social Security Administration found that she became disabled on June 1, 2003.

The doctor who evaluated Lauren Dowdy after the 2003 accident testified that he could not determine whether her alleged pain was from trauma or overuse. He stated that her "patella femoral compression syndrome" (abnormal tracking of the kneecap and the patella in the femoral groove between the condyles of the distal femur) "probably was not caused" by the 2003 accident. Motion, Dkt. # 73, Ex. 18, Depo. Trans., at 17:18 - 19:9.

State Farms' claim expert affied as to one of the ultimate issues in this case, *i.e.*, that State Farm acted reasonably and in good faith in handling the defendants' claims. The expert also affied that it is reasonable and customary practice within the insurance industry for an insurance company to file a declaratory judgment action to resolve coverage issues, and that a legitimate dispute exists

over the cause of defendants' damage claims because State Farm has been unable to determine if the defendants injuries were caused by the 2003 accident. On July 14, 2006, State Farm tendered payment for uninsured motorist and medical pay benefits to the guardian ad litem of Lauren Dowdy and to the personal representative for Kelly Dowdy.

## II. Standard of Review

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *E.g., Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). If there is no genuine issue of material fact, the Court determines whether the substantive law was correctly applied by the district court. *Id.* (citation omitted). The Court resolves all factual disputes and draw all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250.

### III.  Discussion

**A.     Bad Faith Counterclaim**

The gist of defendants' bad faith argument is that State Farm filed a declaratory judgment action before it denied, paid or even evaluated defendants' insurance claim.  More specifically, defendants allege that State Farm delayed payment so that the amount in controversy for State Farm's declaratory judgment action would meet the federal jurisdictional minimum. *See* Answer and Counterclaim, Dkt. # 10, at 3.  However, defendants also contend that State farm acted deceptively, failed to disclose information, created issues to avoid or delay payment of amounts due, unreasonably handled the claim and claims processing, violated the Unfair Claims Settlement Practices Act, failed to promptly provide information concerning potential coverage, and delayed responding to the defendants' claims. *Id.*

An insurer has an implied duty to act in good faith and deal fairly with its insured to ensure that the insured receives the policy benefits. *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000) (citation omitted); *see Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 170-71 (Okla. 2000).  State Farm relies on the principle that "'[t]here is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured.'" *VBF, Inc. v. Chubb Group of Ins. Cos.*, 263 F.3d 1226, 1234 (10th Cir. 2001) (*citing Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996)); *see, e.g., Newport,* 11 P.3d at 195; *Barnes*, 11 P.3d at 171. Further, "[b]ecause disagreements can arise concerning the amount of coverage, cause of loss, and breach of policy conditions, the tort of bad faith does not prevent the insurer from resisting payment

6

or resorting to a judicial forum to resolve a legitimate dispute." *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000).

However, under Oklahoma law, a "legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith or unreasonable conduct." *Haberman v. The Hartford Insurance Group*, 443 F.3d 1257, 1270 (10th Cir. 2006) (citations and internal quotations omitted).

> [W]hen presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient. The decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that it had justifiable reasons for withholding payment under the policy.

*Newport*, 11 P.3d at 195 (citation and internal quotations omitted). The "essence" of a bad faith claim centers on the "unreasonableness" of the insurer's conduct, "including the unjustified withholding of a payment due under a policy." *Newport*, 11 P.3d at 195 (citation and internal quotation omitted); *see Vining v. Enterprise Fin. Group, Inc.*, 148 F.3d 1206, 1215 (10th Cir. 1998). "If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Newport*, 11 P.3d at 195 (citation and internal quotation omitted); *see Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005).

Here, defendants' argument is not that State Farm denied defendants' claim, but that State Farm unreasonably delayed paying it. The record shows that the parties may have had a legitimate dispute. First, they disputed which of two policies was potentially applicable; second, they disputed, and still dispute, whether defendants' claim is covered and, if so, the value of the claim. The parties

disagreed as to whether and to what extent the Oklahoma policy or the Minnesota policy provided coverage to defendants. State Farm filed a declaratory judgment action to resolve the coverage issues, and the Court did so in the August 31, 2005 order by interpreting the insurance policy. An insurance policy is a contract, and "[c]ontract interpretation is always the domain of the courts." *Price v. Mid-Continent Cas. Co.*, 41 P.3d 1019, 1022 (Okla. Civ. App. 2002).

Nonetheless, the manner in which State Farm's adjustors conducted itself in resolving its dispute with the defendants could lead a reasonable juror to find that State Farm did not have a good faith belief, at the time its performance was requested, that it had justifiable reasons for withholding payment under the policy. Defendants argue that State Farm filed the declaratory judgment simply to delay payment. In the affidavit of H.L. Holtmann, the defendants' attorney when they informed State Farm of the 2003 accident, Holtmann admits that the parties disagreed as to the manner in which the Minnesota and Oklahoma policies applied, but asserts that the disagreement was merely "academic" and did not warrant suit, especially since defendants had offered to settle for an amount below potential coverage. Resp. Br., Dkt. # 84, Ex. 2. Although "[a]n action for declaratory relief is appropriate to resolve coverage disputes between the insurer and insured, " *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland,* 928 P.2d 298, 305 n.23 (Okla. 1996), whether State Farm's action in filing for declaratory relief under the circumstances of this case raises a genuine issue of material fact as to whether State Farm acted in good faith and dealt fairly with its insureds.

Further, a legitimate dispute may have existed as to the cause of loss – here, the injuries allegedly sustained by Kelly Dowdy and Lauren Dowdy in the 2003 accident. The medical records eventually received or reviewed by State Farm indicate that the injuries claimed by defendants were caused or could have been caused by other accidents or non-accident related conditions. The

8

medical statements by the treating physicians and those who evaluated the medical record all indicate that Kelly Dowdy's medical problems may have been attributable to the 1998 accident and to other health problems she suffered, while Lauren Dowdy's knee problems could have been attributed to her cheerleading or to general growth problems. State Farm claims that these facts form the basis for its reasonable belief that defendants' claim was legally or factually insufficient, yet there are no references to deposition testimony or affidavits by State Farm adjustors to support that claim. In any event, such belief does not necessarily give an insurer the right to conduct itself unreasonably toward insurers.

When defendants filed their claim, State Farm began its investigation by requesting information from the defendants, or their attorney. Prior to filing the declaratory judgment action, State Farm made at least 20 written requests for information from defendants. State Farms alleges that the requested information was either not forthcoming or delayed and inadequate. The insured "has an obligation to cooperate with the insurer, which is both contractual and implied in law." *First Bank of Turley,* 928 P.2d at 304. The failure to cooperate is an affirmative defense. *See O'Neill v. Long*, 54 P.3d 109, 116 n.11 (Okla. 2002). Nonetheless, defendants have put forth some evidence to dispute State Farm's allegations that they failed to cooperate. Holtmann, in particular, affied that some of the requests for information may not have been authorized by the applicable policies, and other requests may have been confusing, cumulative, or excessive.

These and other aspects of potential bad faith conduct have been raised in the action but were not addressed by plaintiff's motions. Specifically, Holtmann contends that State Farm breached its duty of good faith and fair dealing by (a) failing to notify the insureds in writing of the coverages available to them under each policy and refusing to open a claim until a recorded statement was

given; (b) making misrepresentations regarding the adjustment of the claims; (c) being deceptive or misconstruing the facts or policy provisions; (d) acting under conflicts of interest; (e) failing to fairly and reasonably evaluate damages; (f) creating issues to delay or compromise the adjustment of the claims; and (g) failing to train their adjusters on the applicable laws, or make arrangements for them to find out the applicable laws. *See* Resp. Br., Dkt. # 84, Ex. 2, at 2-4. At least some of these claims could lead a rational juror to find that State Farm acted in bad faith and failed to deal fairly with its insured to ensure that the insured receives the policy benefits.

The alleged misrepresentations concern whether Oklahoma adjustors or Minnesota adjustors, or both, were handling defendants' claim. The alleged conflicts of interest occurred when State Farm originally did not assign separate adjusters to each policy and, when they were separately assigned, they continued to communicate. Defendants claim that the adjustors also attempted to assert rights under one policy that were not authorized by the other policy. The basis for defendants' claim that State Farm failed to train its adjusters or to make arrangements for them to find out the applicable law is purportedly found in deposition testimony by Oklahoma adjustors admitting that they were unfamiliar with the law of Minnesota. Apparently, State Farm may have assigned Oklahoma adjusters to handle Minnesota claims.

The alleged deception involved a failure to disclose the order in which payments should be made. This was, of course, the issue State Farm asked the Court to consider, but apparently it may have taken a while before State Farm would even disclose its position as to the manner in which the policies applied. Defendants' claim that State Farm failed to fairly and reasonably evaluate damages is a variant of their claim that State Farm was not entitled to file suit for a declaratory judgment before gathering all the information and before defendants made any demand for a specific amount,

and that it failed to either deny the claims or pay them before July 14, 2006. Similarly, the claim that State Farm created issues to delay or compromise the adjustment of the claims is another challenge to State Farm's decision to file a declaratory judgment action.

Accordingly, the Court finds that there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of State Farm's conduct in filing the declaratory judgment action and in evaluating defendants' claim. Hence, what is reasonable is a question to be determined by the trier of fact by a consideration of the circumstances in this case. *See Newport*, 11 P.3d at 195. There is a genuine issue of material fact as to whether State Farm had a good faith belief, at the time its performance was requested, that it had justifiable reasons for withholding payment under the applicable policies. State Farm is not entitled to judgment as a matter of law on defendants' bad faith counterclaim.

**B.     Lost Wages and Impaired Earning Capacity**

Defendants assert that they "have suffered lost wages and impaired earning capacity, have incurred expenses for medical care and attention, and will incur same in the future, and have suffered and will suffer emotional distress and have suffered and will suffer emotional distress in the future." Answer and Counterclaim, Dkt. # 10, at 3. State Farm has not sought summary judgment as to whether Lauren Dowdy is entitled to any of the alleged contractual damages. Nor has it sought summary judgment as to whether Kelly Dowdy incurred expenses for medical care and attention or suffered emotional distress which State Farm is obligated to pay under the terms of the applicable insurance policies. State Farm is not entitled to judgment as a matter of law on defendants' claim for lost wages and impaired earning capacity, as genuine issues of material fact exist regarding the cause of Kelly Dowdy's injury.

11

State Farm argues that Kelly Dowdy's claim for lost wages and impaired earning capacity is foreclosed by the uncontroverted evidence that she was "100% permanently totally disabled and economically unemployable" due to the spinal and back injuries caused by the 1998 accident and other medical conditions documented by Dr. Hastings in his independent medical examination. *See* Motion, Dkt. # 73, Ex. 1, at 10. Yet, as defendants point out, the date of Dr. Hastings' report is June 18, 2003, and the Social Security Administration ("SSA") considered June 1, 2003 as the date Kelly Dowdy's disability commenced under SSA rules. *See* Resp. Br., Dkt.# 84, Ex. 9. The basis for the current claim is the January 28, 2003 accident.

> Social Security Ruling 83-20 defines the onset date as "the first day an individual is disabled as defined in the Act and the regulations." Factors relevant to the determination are the claimant's allegation of an onset date, [her] work history, and the medical evidence, with medical evidence being the primary element in determining onset date.

*Reid v. Chater*, 71 F.3d 372, 373 (10th Cir. 1995) (quoting SSR 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49, 1983 WL 31249 (S.S.A.)). While neither Hastings' report nor the SSA finding establish that the 2003 accident caused Kelly Dowdy's inability to work, it does not foreclose damages for lost wages and impaired earning capacity if a jury were to find that the injuries, if any, that she sustained in the 2003 accident affected her ability to work.

Further, defendants point out that Jeffrey Pardee, M.D., who evaluated Kelly Dowdy on April 17, 2001, found "no medical contraindication to Ms. Dowdy working on a full-time basis, in her present position for State Farm Insurance," as a result of temporary disability caused by a cervical strain injury in the 1998 accident and preexisting conditions not caused by the 1998 accident. See Resp. Br., Dkt. # 84, Ex. 1. This evidence tends to show that Kelly Dowdy was able to work after the 1998 accident, and Dr. Hastings' report indicates that, in fact, she did continue to

work at State Farm until approximately September or October 2002 – a few months before the January 2003 accident. *See* Motion, Dkt. # 73, Ex. 1, at 6. Whether she was able to work at all when the 2003 accident occurred and whether the 2003 accident caused her to suffer lost wages or impaired earning capacity are factual issues for the jury to determine.

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. # 73) is hereby **denied**.

Dated this 4th day of August, 2006.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE